My name is Dan Donovan from Great Falls. I represent the Juvenile Male, who I will refer to as Ron. I'd like to reserve two minutes for rebuttal, if I may. Judge Haddon actually sent us here, myself and the prosecutor, to, in his words, what he said, bring the Indian person issue to a definitive resolution. I don't know if we're going to be able to do that. Is that like sending a certified question to the State Supreme Court and having them say, thanks very much, but we really don't feel like answering it? I think so. So we didn't think that Bruce and Madgie and all these others answered the question, we have to do one more? Is that the message? Well, I think it's really all a fact-based determination, and the cases say it's a case-by-case thing, so there's really no way to give a magic test, I think, or a definitive test. Well, let me ask you, in your case, we've had a number of these Indian status cases, and as you march through the factors, I guess you would agree that Bruce is our starting point? Correct. Okay. So we march through those, and it would seem that your client quite easily meets the first three, correct? Correct. He's a tribal member. Yeah, he's a tribal member, we don't have the blood issue like we do in some cases, we don't have the benefits issue, like, you know, that seems clearly established. So we're kind of down to the last and supposedly the declining in importance factor, and that's the recognition. Given how Bruce is set up, I guess it would help me for you to articulate why getting down to the last factor we would be able to overturn the district court and say, well, that factor actually tips the balance, and the government is wrong. Well, the really only argument I have is that raises a reasonable doubt, and the government's required to prove an Indian person by proof beyond a reasonable doubt, and clearly here there's no social recognition, social acceptance. We have a person who definitely does not want to be an Indian, although he's, you know, half or he's one quarter Indian by blood. That's basically what it boils down to, but if you look at, if you add up the facts or say, well, you've got three out of four, that's enough, then that's enough. But the other thing I'd bring up, too, is the case of the Ninth Circuit as opposed to the Eighth Circuit say that tribal membership is the most important factor. Well, you have tribal membership here, but should you just stop there? You know, and I say no because this court has listed these factors under the recognition as an Indian. But we didn't, you know, I don't know that we've stopped there, and you make a good point, but we had kind of a reverse situation in Bruce where we said even though that's the most important factor that in Bruce the individual was not an enrolled member of the tribe, and we still found that there was sufficient meeting of these factors. So that's why I'm trying to figure out how the lowest factor on the list somehow can trump the other three. I mean, we would have to basically decide that the last factor could trump the other three to rule in your favor. Correct. Would that be right? That'd be correct. Is it that, or are you trying to ask us to embrace what I hear your argument to be that the four factors are not factors, they're elements, and that in order to establish the element that your client is an Indian, all four of those sub-elements must be established by proof beyond a reasonable doubt? That's one of, that's I guess a corollary argument. I'd also point out that to my knowledge this case, Ron's case, is the first case where there was tribal membership. Bruce and the other ones, there was no tribal membership. And a recent unpublished case that came out this fall in a post-conviction case, a Smith case, that individual had been an associate member of a tribe but had renounced his membership. But, Mr. Donovan, would we as a three-judge panel have the authority in light of LaBeouf, Bruce, and I think there's a third case, the name of which is escaping me, to hold that all four factors must be met in every case by proof beyond a reasonable doubt, or the government can never prove as an element of an 1153 offense that the defendant is an Indian? I'd have a real problem going that far. I think you would, in essence, maybe overrule the other case law. And I don't think we have the authority to do that. I mean, that's one of the difficulties, really, that the devil's not only lawyers, but the court in downstream cases where you have these factor tests. I mean, we just had a totality of the factors just argued, of course, in the case before yours, and now we have, in effect, the totality here. All the Ninth Circuit has given it a hierarchy. So, you know, there is a lot of common sense appeal to your case, given who your client is and, you know, what his argument is. We're just, I think, somewhat constrained in how we could fit that into our law. I understand that. I would make, if I may make a couple points from the Cruz case. The Cruz case said the extent to which an individual considers himself to be an Indian is most certainly relevant. And in my research in these cases, in the Ninth Circuit as well as in other cases, I don't think there's any case where someone who has not considered himself to be an Indian or has held himself out to be an Indian has been determined to be an Indian under this test, with the exception of the recent LaBeouf case. But the LaBeouf panel found that there was a reasonable inference that Mr. LaBeouf was part of the Indian social life because he lived on the reservation all his life. And, of course, that isn't the situation here. We have specific facts here indicating that Ron is not, he's rejected, in fact, not only not accepted, but he's rejected by tribal members. What kind of impact might that have if we were to rule that way on civil cases where we have Indians who are not living on the reservation but who are nonetheless recognized as such by the Department of the Interior and are afforded certain benefits that are not given to non-Indians? That's a good question. I really can't answer it because I do know that there's several definitions of Indian, some statutory, some by case law. And it seems to me that at least in criminal jurisdiction cases, there's got to be some sort of living on the reservation. And I admit my client did live on the reservation here. I mean, it wasn't like he was a visitor for one day or something. We kind of turned the test into a popularity contest, though, to a certain degree. Like, how well are you accepted? And there's a lot of reasons that people may or may not be integrated into a community that may not really relate to whether they're Indian or not. So that would be a pretty fluid test that you suggest if we were to go that route. That would be correct. Would that mean, for example, that if, as a result of some tribal adjudication, the tribe had ordered one of its members off the reservation, that he was no longer an Indian? It seems to me that the Rogers, the basic Supreme Court decision back in the 1800s, there's two prongs, the blood or race prong and the political prong. And that would seem to me to be a political reason. If the tribe rejects somebody, they aren't an Indian. But bigger question, what if the person renounces his tribal membership and remains living on the reservation? I was thinking, I don't even know if they still do this. I've read some cases in the past. I mean, suppose the tribe banishes Ron from the reservation because they don't like him. He fails Judge McEwen's popularity contest test. And so they say, you know, you can go live someplace else but not on our reservation. Does that make him a non-Indian because he's been banished? Well, if the crime happened after that point, give me a stronger argument. I'll give you that. If it happened beforehand, you know. And then they banish him. Would you like to save your remaining time? I don't think they can renounce membership after the crime has been committed and they've been charged, you know. Fair point. Good morning, Your Honors. May it please the Court, Michael Wolfe on behalf of the United States. Judge McEwen, I believe you summed this case up quite nicely when you said that quite easily the appellant here meets the first three factors and the government submits that that's sufficient in this case. The meeting of the three most important factors under the second prong of the Bruce test and that failure to meet the fourth factor cannot somehow trump meeting of the first three factors. As you know, the appellant has admitted that he does meet the first three factors under that second prong of the Bruce test. And the government's position is that that certainly meets the beyond the reasonable doubt standard here. If you look at the other cases. The standard applied to what? That was what I was trying to explore with Mr. Donovan. It is an element, is it not, of a Section 1153 prosecution that the defendant be shown to be an Indian. That's correct, Your Honor. And that is what must be shown by proof beyond a reasonable doubt. The question is what does the fact finder look to to make that determination? We've articulated four factors in our cases. And I hear Mr. Donovan arguing that all four have to be met or, as a matter of law, no reasonable fact finder could conclude that Ron was an Indian. Well, I think it's the factors because the case law, beginning with Bruce, says that they're declining order of importance. It's a totality of circumstances. Not all the factors need to be met in order to prove that the person is an Indian. It's a case-by-case consideration, a totality of circumstances. And, I mean, if you look most recently to the LaBeouf decision, there the defendant was not an enrolled member, and the court found that a mere satisfaction of the second and third prong was sufficient to find LaBeouf to be an Indian. Do you think that the determination of whether he is an Indian is a factual determination in the end or a legal determination? Well, Your Honor, based upon the longstanding precedence since Bruce in this circuit anyway, is that it is a factual question to be submitted to a jury. So a jury, let's say that we had a jury trial in this case, then I guess people would ask for a jury instruction along the lines of Bruce. Correct. And if the jury looked at that and said, you know, we see all that, but it's kind of odd to have an Indian who's not really an Indian be prosecuted as an Indian, a jury on the basis of this record could also make a determination that he's not an Indian, correct? I believe it's a possibility with the jury, Your Honor. You know, they've certainly, I believe the Ninth Circuit pattern instruction for this question now does indicate that these four factors are declining order of importance. But, you know, if a jury was to believe that the defendant, because he didn't see himself as an Indian, they possibly would find that more important. However, I do believe that based on this record and these facts, that a jury would easily find that the defendant was an Indian person. I think it's important to point out Appellant argues that he never held himself out to be an Indian or doesn't consider himself to be an Indian. However, I disagree with that point. And although that maybe socially he felt like an outcast on the reservation when he was living there, he certainly held himself out to be an Indian to gain benefits reserved only to Indians. Right, but that kind of bootstraps the third factor into the fourth factor, doesn't it? Yes, but it's something that I believe from the other decisions is something that can be considered. In the Loboff decision, the court said that the second and third factors were met because the person had accepted those benefits and was recognized by the tribe because of it, and that that's holding yourself out as an Indian. If you're submitting to the jurisdiction of tribal courts, if you're accepting per capita checks, if you're using your tribal member identification card to gain exemption from state taxes, that's accepting or, you know, acknowledging those benefits and holding yourself out as an Indian. I mean, this appeal is basically a challenge to the sufficiency of the evidence following a bench trial, is it not? That's correct, Your Honor. Judge Haddon, as the trier of fact, made the determination that he is, by proof beyond a reasonable doubt, an Indian. And the question is whether or not the evidence that we've been wrestling with is sufficient to support a reasonable fact finder in making that conclusion. Yes, and the evidence is to be viewed in the light most favorable to the government. So I would just conclude, if there are no further questions from the bench, that the defendant here did meet clearly the first three factors and a partial recognition of the fourth factor by residing on the reservation, that that is sufficient to affirm the district court, and the district court was correct. Thank you, Your Honor. Thank you. Mr. Donovan, did you have anything to add? I will say, if I may, two points. The Eighth Circuit's stymiest case states that a person submitting to tribal court jurisdiction or seeking medical care is not sufficient to satisfy the political requirement, and that seems contrary to the way I read LaBeouf. But I'd also point out that being a tribal member is really based on race and not politics. The last point I'd like to make is maybe I mixed some terms here, but I don't think you can apply a totality of circumstances case to a reasonable doubt analysis. If there's a reasonable doubt, there's a reasonable doubt. There may be 99 factors pointing to guilt, but if there's one reasonable doubt, then there's not proof beyond a reasonable doubt. But if my question to your opponent is the right analysis, it's really, in this case, a Jackson v. Virginia sufficiency of the evidence question, isn't it? It is. But at the outset, it's also under the case law de novo review where you first take your own look at the facts de novo and then decide can any reasonable trier fact find proof beyond a reasonable doubt, and I'm saying no, there's a reasonable doubt. Okay. All right. I think we have your argument in mind. Thank you. Thank you. Thanks, both of you, for coming. And the case just argued of United States v. Juvenile Mail is submitted. I think that concludes our Montana cases. So now we'll move on to Frost v. Virginia.
judges: Guy, McKeown, Tallman